FILED
May 24, 2021
02:12 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| PAULETTE CARTER, | ) | Docket No. 2019-05-1059 |
| **Employee,** | ) | |
| v. | ) | |
| FRITO-LAY, INC., | ) | State File No. 52007-2019 |
| **Employer,** | ) | |
| And | ) | |
| INDEMNITY INS. CO. | ) | Judge Dale Tipps |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER

---

The Court held a Compensation Hearing on May 13, 2021. The issues were whether Ms. Carter is entitled to permanent disability benefits, as well as additional temporary disability and medical benefits. For the reasons below, the Court holds that Ms. Carter is not entitled to permanent disability or additional temporary disability benefits. She is entitled to any further medical treatment recommended by her authorized doctors but not the additional treatment she requested during the hearing.

### History of Claim

Ms. Carter was at work on June 9, 2019, when a stack of boxes fell on her. She reported the injury and received on-site physical therapy treatments until Frito-Lay provided a panel of physicians. Ms. Carter selected an occupational clinic, and a right-shoulder MRI revealed several tears and a bone lesion. The doctor referred Ms. Carter to her primary care physician to address the lesion and to an orthopedic specialist for her work injuries. She selected Dr. Troy Layton from a panel of orthopedists.

At Ms. Carter's first appointment with Dr. Layton, she complained of right-shoulder pain and weakness. He observed a bone scan showed a bone lesion in the glenoid that was not work-related. Regarding the work injury, Dr. Layton was "very concerned that the radiologist under-read the severity of the tear." He diagnosed a sprain of the right shoulder cuff capsule and impingement syndrome, and he performed a subacromial injection. When

1

Ms. Carter returned on August 26, Dr. Layton noted that she was "getting a workup" with another provider regarding the lesion. He recommended arthroscopy with decompression and rotator cuff repair but ordered an MR arthrogram since Ms. Carter had concerns about proceeding with the arthroscopy.

Before undergoing the MR arthrogram, Dr. Layton saw Ms. Carter again and noted he could not comment on her complaints of pain between the shoulder blades or in the neck because he does not treat those body parts. He had "no explanation for why her shoulder appears to be dropping other than voluntary muscular temporary dysfunction. There is no intra-articular shoulder pathology, rotator cuff or labral, that would cause this."

Reviewing the MR arthrogram, Dr. Layton said that the labrum was completely intact with some chronic joint arthrosis. He also discussed a "very limited partial-thickness tear" on the undersurface of the supraspinatus. Dr. Layton further noted that the bone lesion represented a degenerative process. He recommended non-surgical management and eventually referred Ms. Carter to Dr. Jeffrey Hazlewood, a physiatrist, for her complaints of neck pain.

Before seeing Dr. Hazlewood, Ms. Carter returned to Dr. Layton. He told her that her shoulder blade pain was brought on by her physical therapy for the work injury, but the medial shoulder and neck pain was not related to her shoulder injury. Dr. Layton reiterated that he would not recommend surgery and that the bone lesion was not work-related. He said he would see her on an as-needed basis.

When Dr. Hazlewood first saw Ms. Carter, his impression included chronic right-shoulder pain, with the MRI showing "some partial rotator cuff tears, but nothing significant." He felt Ms. Carter's guarding and atypical pain behavior was out of proportion to her MRI findings. Dr. Hazlewood wrote that her history of fibromyalgia and chronic opioid dependency might be factoring into her presentation. He doubted cervical disc herniation but recommended a cervical spine MRI and an EMG of the right arm.

Ms. Carter returned to Dr. Hazlewood after her tests. He found degenerative changes but no acute disc pathology. The EMG showed carpel tunnel syndrome but no cervical radiculopathy or brachial plexopathy. He wrote, "[t]he type of injury she describes should not cause any structural neck pathology." He characterized her problem as "subjective pain and no objective explanation." Dr. Hazlewood had no further recommendations, placed Ms. Carter at maximum medical improvement, and returned her to full duty. He also said he would see Ms. Carter again as needed.

Dr. Hazlewood later gave a deposition. He agreed with Dr. Layton's findings and added that he could not explain the cause of Ms. Carter's pain, especially in view of her mechanism of injury. Dr. Hazlewood also said the cervical MRI showed degenerative changes but no disc herniation that would cause her symptoms or be related to the injury.

The EMG showed no cervical radiculopathy or brachial plexus injury. Dr. Hazlewood concluded that the accident would not cause Ms. Carter's pain presentation. He placed her at maximum medical improvement and assigned a zero permanent impairment rating.

For several years before her work injury, Ms. Carter regularly saw her personal physician, Dr. Paul Sain, for chronic pain management. His records show he prescribed opioids for fibromyalgia and neuropathy. Ms. Carter continued to treat with Dr. Sain after her work injury, and he referred her to an orthopedic specialist.

Dr. Sain completed a Form C-32 Medical Report. He identified a partial right rotator cuff tear, subchondral cyst, and brachial radiculopathy, all of which were either primarily caused by the work injury or were pre-existing conditions aggravated primarily by the work accident. Dr. Sain added that, because of her work injury, Ms. Carter was unable to work from January 16, 2020, to the present. Although he assigned permanent restrictions, Dr. Sain identified no date of maximum medical improvement and gave no permanent impairment rating.

At the hearing, Ms. Carter requested more medical treatment so that she can return to her pre-injury condition. Specifically, she would like Frito-Lay to provide treatment with her unauthorized physicians. These include Dr. Sain, Dr. Mark Leberte (who was scheduled to perform a right-shoulder arthroscopy on Ms. Carter on May 24), and Dr. Murray Spruiell for cervical pain.[1]

Frito-Lay contended that Ms. Carter is not entitled to additional benefits. It pointed out that she received medical treatment through authorized specialists and temporary disability benefits during the time those physicians took her off work. Frito-Lay argued that both authorized doctors provided an opinion that Ms. Carter's current symptoms are not related to her work accident. Thus, it is not responsible for the additional treatment recommended by her unauthorized physicians. However, it acknowledged that she retains the right to return to Dr. Layton or Dr. Hazlewood. Frito-Lay also denied it is liable for any additional disability benefits because Ms. Carter is at maximum medical improvement and retains no permanent impairment.

### Findings of Fact and Conclusions of Law

Ms. Carter, as the employee in a workers' compensation claim, has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a compensation hearing, she must establish by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9,

---

[1] Ms. Carter offered records from these and other medical providers at the hearing, but they were not admitted into evidence.

3

2015).

*Medical Benefits*

Ms. Carter seeks medical treatment for her neck and shoulder beyond what has already been provided by Drs. Layton and Hazlewood. To prove entitlement to this additional treatment, Ms. Carter must show that her alleged injuries arose primarily out of and in the course and scope of her employment. This includes the requirement that she must show, "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14).

Frito-Lay does not dispute that an injury occurred. The question, therefore, is whether Ms. Carter proved that her work injury primarily caused her current symptoms or need for treatment. The medical evidence of causation in this case consists of the opinions of Drs. Layton, Hazlewood, and Sain. When faced with differing expert opinions, the Court has discretion to determine which to accept. *Lamb v. KARM Thrift Stores, LLC*, 2017 TN Wrk. Comp. App. Bd. LEXIS 42, at *6 (July 26, 2017). In doing so, it can consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Regarding the shoulder injury, Frito-Lay relies on Dr. Layton's opinion that Ms. Carter suffered a small partial-thickness rotator cuff tear and is no longer a surgical candidate. He also said that the cyst is a degenerative condition. As an authorized treating physician, selected from a panel, Dr. Layton's opinion is afforded a rebuttable statutory presumption of correctness. *See* Tenn. Code Ann. § 50-6-102(14)(E). Thus, the first issue before the Court is whether Ms. Carter successfully rebutted that presumption by a preponderance of the evidence. The Court finds that she did not.

The only medical evidence supporting Ms. Carter's claim is Dr. Sain's C-32 report. In it, he said that Ms. Carter's partial rotator cuff tear, subchondral cyst, and brachial radiculopathy were all either primarily caused by the work injury or were pre-existing conditions that were aggravated primarily by the work accident. However, Dr. Sain is a general practitioner who treats Ms. Carter for chronic pain, not for the injuries she is claiming. It is not clear from his records whether he reviewed the actual arthrogram or merely relied on the radiologist's or Dr. Layton's reports. Further, his checkmark responses on the C-32 offer no insight into how Dr. Sain reached his conclusions.

Dr. Layton, on the other hand, is an orthopedic surgeon, who treated Ms. Carter for

4

the problems she attributed to this accident. His diagnostic and treatment decision-making processes are apparent in his medical records, and there is no evidence of any obvious deficiencies in either. Under the circumstances, Dr. Sain's C-32, without more, is insufficient to rebut Dr. Layton's opinion that the cyst is a degenerative condition and that Ms. Carter is no longer a candidate for rotator cuff surgery.

As for Ms. Carter's other complaints, Frito-Lay relies on Dr. Hazlewood's opinion that she suffers from degenerative changes but no disc herniation, cervical radiculopathy, or brachial plexus injury arising out of her work accident.[2]

Regarding the cervical complaints, Ms. Carter presented no medical evidence supporting her claim, as Dr. Sain did not address her neck condition. To the extent Dr. Sain and Dr. Hazlewood disagreed on the alleged brachial radiculopathy, Dr. Sain's C-32 suffers from the same deficiencies noted above, in that the Court has no evidence as to how Dr. Sain diagnosed a brachial plexus injury. Further, Dr. Hazlewood is not only a board-certified physiatrist, but he also performed the EMG test himself and testified it showed no damage to the nerves in the plexus. Considering the qualifications of the doctors, the circumstances of their examination, and the information available to them, Dr. Hazlewood's opinion is more persuasive. As a result, the Court finds Ms. Carter has not proven that her alleged cervical condition, bone lesion, brachial plexus injury, or the need for treatment of any of those conditions, were primarily caused by her work injury.

Ms. Carter argued that because her physical condition deteriorated after the accident, it follows that her work was the cause of her current problems. The Court understands her position but is constrained to the medical record before it, because "judges are poorly positioned to formulate expert medical opinions." *Love v. Delta Faucet Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at *15-16 (Sept. 19, 2016). Similarly, the Court recognizes Ms. Carter's contention that all the medical records, with the exception of Dr. Hazlewood's, refer to impingement. However, even if true, the Court must rely on medical proof to conclude that the impingement was primarily caused by the work accident, and, as noted above, the medical proof is insufficient to support this finding.

Finally, as previously found, Frito-Lay discharged its statutory obligation to provide medical benefits made reasonably necessary by accident. Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) requires Ms. Carter to "accept the medical benefits afforded under this section" and allows employers to designate the panel doctors who are authorized to provide those benefits. Both Dr. Layton and Dr. Hazlewood said that they would see Ms. Carter again as needed, and Frito-Lay confirmed that she could return to either of them. Thus, the Court finds that Ms. Carter is entitled to future medical benefits with Drs. Layton and Hazlewood as her authorized treating physicians.

---

[2] Because Dr. Hazlewood was not selected from a panel, his causation opinion is not entitled to the same presumption of correctness as Dr. Layton's.

*Temporary Disability Benefits*

To receive temporary total disability benefits, Ms. Carter must prove: (1) she became disabled from working due to a compensable injury; (2) a causal connection between the injury and her inability to work; and (3) the duration of her disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). The parties stipulated that Frito-Lay paid temporary disability benefits through January 15, 2020, when Dr. Hazlewood said she reached maximum medical improvement. However, Ms. Carter relies on Dr. Sain's opinion that she has been unable to work since then.

The Court has already determined that Ms. Carter's claims of work-related cervical injury, cyst, or brachial plexus injury are unsupported by a preponderance of the medical proof. Because Dr. Sain's opinion regarding her ability to work appears to be based at least in part on those diagnoses, Ms. Carter has not shown a causal connection between these conditions and her inability to work. Without that evidence, Ms. Carter is not entitled to temporary disability benefits.

*Permanent Partial Disability Benefits*

The Court next turns to the question of Ms. Carter's entitlement to permanent partial disability benefits. An award of permanent partial disability is calculated by multiplying an employee's impairment rating by four hundred fifty weeks. Tenn. Code Ann. § 50-6-207(3)(A). The only impairment rating in this case was Dr. Hazlewood's zero percent. As a result, Ms. Carter has not proven entitlement to permanent disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Frito-Lay shall provide Ms. Carter future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A). Dr. Layton and Dr. Hazlewood remain the treating physicians.

2. Ms. Carter's claims for additional treatment with other physicians are denied.

3. Ms. Carter's claims for temporary and permanent disability benefits are denied.

4. Frito-Lay shall pay to the Court Clerk the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.06 within five days of entry of this order.

5. Frito-Lay shall file an SD-2 with the Court Clerk within five days of entry of this order.

6. Unless appealed, this order shall become final thirty days after entry.

**ENTERED MAY 24, 2021.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Dr. Sain's August 13, 2020 letter (Identification only)
2. Dr. Leberte's May 7, 2021 excuse slip (Identification only)
3. Dr. Carroll's May 6, 2021 treatment note (Identification only)
4. Dr. Carroll's April 22, 2021 treatment note (Identification only)
5. Dr. Deaton's April 15, 2021 letter (Identification only)
6. Dr. Leberte's May 7, 2021 treatment note (Identification only)
7. Dr. Sain's C-32
8. Dr. Deaton's C-32 (Identification only)
9. Dr. Spruiell's records (Identification only)
10. Emails from Sedgwick to Ms. Carter
11. June and July 2020 emails between Ms. Carter and Frito-Lay's counsel (Identification only)
12. Email from Troy Hailey to Ms. Carter (Identification only)
13. Emails between Angela Sparkman and Frito-Lay's counsel (Identification only)
14. Dr. Sain's May 23, 2019 and July 24, 2019 treatment notes
15. Dr. Sain's April 15, 2021 letter (Identification only)
16. Dr. Sain's letters of January 15, February 13, June 11, and August 13, 2020 (Identification only)
17. TheraFit record of October 29, 2019 (Identification only)
18. Radiology records August 3 and December 5, 2019
19. Dr. Sain's June 11, 2020 letter (Identification only)
20. Blue Cross records (Identification only)
21. SportsMED return-to-work forms
22. March 2021 emails between Ms. Carter and Frito-Lay's counsel. (Identification only)
23. October 20, 2020 letter from Frito-Lay's counsel to Ms. Carter
24. July 1, 2019 C-42 Form
25. July 23, 2019 C-42 Form
26. Records from HealthGroup of Alabama (Identification only)

27. Dr. Layton's records
28. Dr. Hazlewood's records
29. Transcript of Dr. Hazlewood's deposition
30. Ms. Carter's written discovery responses
31. Wage Statement
32. TTD payment log

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Scheduling Order
4. Notice of Intent to Use C-32 of Dr. Sain
5. Notice of Intent to Use C-32 of Dr. Deaton
6. Objection to C-32 of Dr. Sain
7. Objection to C-32 of Dr. Deaton
8. Employer's Exhibit List
9. Employee's Exhibit List
10. Employee's Pre-Compensation Hearing Statement
11. Employer's Pre-Compensation Hearing Statement
12. Employer's Pre-Trial Brief
13. Employee's Pre-Trial Brief

## CERTIFICATE OF SERVICE

I certify that a copy of the Compensation Hearing Order was sent as indicated on May 24, 2021.

| Name | Certified Mail | Email | Service Sent To |
|---|---|---|---|
| Paulette Carter | | X | Gtp.2000daytona@gmail.com |
| John R. Lewis, Employer's Attorney | | X | john@johnlewisattorney.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**


### CERTIFICATE OF SERVICE


I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*